**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In Re: ) | Chapter 11 |
| ) | |
| DONNA J. BARNES, ) | Case No. 19-20400 |
| ) | |
| Debtor ) | |
| ) | |
| DONNA J. BARNES, ) | |
| ) | |
| Movant ) | |
| ) | Adv. No.:  19-02025 |
| v. ) | |
| ) | |
| JAMES R. BARNES ) | |
| ) | |
| Respondent ) | |

## AMENDED TRIAL MEMORANDUM

**NOW COMES** Defendant LH VT HOUSE, LLC ("LH") and pursuant to the Court's pretrial order entered on January 15, 2020 [ECF # 66], hereby submits its trial memorandum in advance of the trial scheduled in the above-captioned matter.

**1.  Trial Counsel**

LH hereby designates the following attorneys as trial counsel:

Scott Rosen
Cohn Birnbaum & Shea, P.C.
100 Pearl Street
Hartford, CT 06103
(860) 493-2200
Email:  srosen@cbshealaw.com

Theodore Orson
Orson and Brusini, Ltd.
144 Wayland Avenue
Providence, RI 02906

1

(401) 223-2100
Email: torson@orsonandbrusini.com
(Mr. Orson has been admitted *pro hac vice*
in the Chapter 11 bankruptcy case of Donna Barnes;
a petition to admit Mr. Orson *pro hac vice* in this
adversary proceeding is currently pending.)

**2.  Jurisdiction**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S. §§ 157 and

1334.

**3.  Jury/non-jury**

This will be a non-jury trial.

**4.  Nature of the Case**

The first issue in this case was whether this Court, in the Chapter 11 case of Donna Barnes,

had authority to order the sale of a Rhode Island home located at 33 Bay Street in Westerly, Rhode

Island (the "Rhode Island Property") owned by Ms. Barnes and her non-debtor husband, James

Barnes, as tenants in the entirety.  In addition to two (2) consensual mortgages granted to lenders

by Ms. Barnes and Mr. Barnes, the Rhode Island Property is also encumbered by four (4)

executions solely recorded against Mr. Barnes's interest in the Rhode Island Property.  LH had

argued that the Court did not have authority to order a Section 363 bankruptcy sale under these

circumstances.  However, on December 19, 2019, in its Ruling and Memorandum of Decision

Denying Defendants' Motions to Dismiss [ECF # 36] (the "Decision"), the Court ruled against LH

and determined that the Court has authority to order the sale of the Rhode Island Property free and

clear of liens pursuant to Bankruptcy Code sections 363(f), 363(h), 363(e) and 105(a), with each

such lien holder obtaining a replacement lien on the sale proceeds in the same amount and in the same priority as the liens against the Rhode Island Property existed immediately prior to sale.

The next issue in the case will be whether the winning bid at the February 29, 2020 auction in the amount of $10,300,000 is "grossly inadequate" and, if so, whether the Court should order the remarketing of the Rhode Island Property.  As set forth in Section 8(a) below, LH will offer evidence at trial that that the winning bid of $10,300,000 is "grossly inadequate" and the Court should order the remarketing of the Rhode Island Property.

The final issue in this case will be whether the sale proceeds from the Section 363 sale of the Rhode Island Property, (after such a sale is confirmed by the Court) should be applied either: (i) (as will be argued by LH) to the liens on the Rhode Island Property in their respective priority regardless of whether they are consensual liens from both the Debtor and her husband Mr. Barnes or executions recorded solely against Mr. Barnes' interest in the Rhode Island Property, or (ii) (as will be argued by the Debtor) to the two (2) consensual mortgages with the balance of sale proceeds divided one half to the Debtor's estate and the other half to pay attachments against Mr. Barnes' interest in the Rhode Island Property.  In the Decision, the Court reserved on this legal issue.

As set forth in Section 8(b) below, the Rhode Island Supreme Court has made clear that a Rhode Island tenancy in the entirety is a single indivisible interest which is not defeated by a sale from husband and wife to a third party.

## 5.  Stipulations of Fact and Law.

None.

## 6.  Plaintiff's Contentions.

3

Plaintiff in her Adversary Proceeding Complaint asserts a claim for relief pursuant to 11 U.S.C. § 363(h) to sell the Rhode Island Property which she owns with Mr. Barnes as tenants by the entirety. An auction of the Rhode Island Property was conducted on February 29, 2020. The winning bid was $10,300,000. At trial, LH expects that the Debtor will seek the Court's confirmation of the sale of the Rhode Island Property for $10,300,000.

Plaintiff will contend that the sale proceeds should be first applied to the two (2) consensual mortgages and the balance of the sale proceeds should be divided 50:50 between her estate and the attachments against Mr. Barnes' interest in the Rhode Island Property.

**7. Defendant's contentions**

LH will contend that the Court should deny confirmation of the sale of the Rhode Island property for $10,300,000 because that sale price will not maximize creditor recovery and is "grossly inadequate" because it does not offer fair value for the asset. LH will request that the Court order the re-marketing of the Rhode Island Property pursuant to the terms of a marketing plan it intends to offer at trial.

LH will contend that the sale proceeds should be applied to the liens on the Rhode Island Property based on their respective priority regardless of whether they are consensual liens from both the Debtor and Mr. Barnes or executions recorded solely against Mr. Barnes' interest in the Rhode Island Property.

**8. Legal issues**

1. <u>**Whether the Court should confirm the sale of the Rhode Island Property at auction for $10,300,000**</u>.

In her Adversary Proceeding Complaint, the Debtor requested authority from the Court to sell her interest in the Rhode Island Property, and that of Mr. Barnes, pursuant to Section 363(h).

On January 21, 2020, the Court granted Plaintiff's Motion to Approve Bidding Procedures (the "Approved Bidding Procedures"), allowing the Trustee to sell the Rhode Island Property at auction on February 29, 2020 [ECF # 196].    The Approved Bidding Procedures included *inter alia* approximately two (2) months of marketing in advance of the auction.    At the auction on February 29, 2020, there were only two (2) active bidders that bid on the Rhode Island Property.    The highest bid for the Rhode Island Property was $10,300,000. At trial, LH expects that the Debtor will seek confirmation of the sale of the Rhode Island Property for $10,300,000.

The governing principle at a hearing to confirm a Section 363 sale is the securing of the highest price for the bankruptcy estate.  *In re Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir. 1985). "A central purpose of bankruptcy, after all, is to maximize creditor recovery."  *In re Sunland, Inc.*, 507 B.R. 753, 759 (Bankr. D.N.M. 2014). An application of the "best interest of creditors" test must look at the effect on all creditors, not just general unsecured creditors.  *In re Hart's Mfg. Co.*, 383 B.R. 720, 724 (Bankr. W.D. Tenn. 2008).    As part of its inquiry, the Court will consider whether the sale would increase the overall assets of the estate, and whether it will increase the payoff to all creditors. *Id.*

Another ground for denying confirmation of a sale is a determination that the approved sales price was "grossly inadequate." *Id.* at 878; *In re W. Biomass Energy LLC*, No. 12-21085, 2013 Bankr. LEXIS 3166 (Bankr. D. Wyo. Aug. 6, 2013).  The proposed price must be so low as to "shock the conscience" of the court and raise a presumption of fraud, unfairness or mistake.  *In re Food Barn Stores,* Inc., 107 F.3d 558, 564 (8th Cir. 1997); *In re Chung King, Inc.*, 753 F.2d 547, 550 (7th Cir. 1985); see generally *Smith v. Juhan*, 311 F.2d 670, 672 (10th Cir. 1962); I*n re Stanley Engineering Corp.*, 164 F.2d 316, 318-319 (1ˢᵗ Cir. 1947), *cert. denied*, 332 U.S. 847, 68 (1948); *Raleigh & C.R. Co. v. Baltimore Nat. Bank, 41 F. Supp.* 599, 601 (D.C.S.C. 1941); *Bankers*

*Fed. Sav. & Loan Ass'n v. Rhode Island Property*, 581 N.Y.S.2d 858 (N.Y.A.D. 1992); *Investors Sav. Bank v. Phelps*, 397 S.E.2d 780 (S.C. App. 1990). Courts generally compare the proposed sale price against the appraised value of the property to determine the reasonableness of the winning bid. *In re Stanley Engineering Corporation*, 164 F.2d 316, 318-319 (1st Cir. 1947); see also *Smith v. Juhan*, 311 F.2d 670 (10th Cir. 1962); *In re Blue Coal Corp.*, 168 B.R. 553, 564-565 (Bankr. M.D. Pa. 1994); *In re Kendall Foods Corp.*, 122 B.R. 792 (Bankr. S.D. Fla. 1990).

A bankruptcy court is generally afforded wide latitude in deciding whether to grant or deny approval of estate asset sales. *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) citing *In re WPRV-TV, Inc.*, 983 F.2d 336, 340 (1st Cir. 1993); *Chung King* at 549. A bankruptcy court has significantly greater discretion to deny the confirmation of a sale than to set aside the sale. *In re Snyder*, 74 B.R. 872, 876 (Bankr. E.D. Pa. 1987) citing *Ching King* at 550-51.

The proposed sale of the Rhode Island Property for $10,300,000 should not be confirmed because 1) it will not maximize the assets of estate and increase the payoff to creditors, and 2) the winning bid of $10,300,000 is grossly inadequate.

At trial, LH intends to introduce the testimony of Rhode Island appraiser Peter Scotti regarding the value of the Rhode Island Property. Mr. Scotti was only recently engaged after mediation efforts failed. Coincidentally, Mr. Scotti is viewing the property today and expects to have his estimate of value or a range of value within a few days. Once such an appraisal is produced, a copy of the same will be filed with the Court as a supplement to this pretrial memorandum. Mr. Scotti will also testify that the marketing of the Rhode Island Property was woefully inadequate for a unique property like the Rhode Island Property.

Moreover, in November 2019, a comparable waterfront property in Watch Hill sold for $17,700,000, which further demonstrates that the winning auction bid of only $10,300,000 does not constitute fair value.  See *In re Snyder*, 74 B.R. 872, 876 (Bankr. E.D. Pa. 1987).

Confirmation of a proposed Section 363 sale may be denied on the basis of inadequacy of price where there is a substantial disparity between the bid or contemplated sales price and the appraised or fair market value, and there is a reasonable degree of probability that a substantially better price will be obtained by a resale..." *In re Blue Coal Corp.*, 168 B.R. 553, 561 (Bankr. M.D. Pa. 1994).  Here, there have been exceptional extenuating circumstances to suggest that if the Rhode Island Property is re-marketed for a longer period of time and sold again at auction, there is a reasonable degree of probability that a substantially better price would be obtained.

The Rhode Island Property was sold at auction just as the United States began to feel the global economic effects of the coronavirus pandemic.  On January 21, 2020, the first known coronavirus case was announced in Washington State.[1] On February 28, 2020, the day before the auction, *Forbes Magazine* reported that the United States stock market was in "free fall" as a result of fears about a global outbreak of the coronavirus.[2]  These were unprecedented circumstances that more than likely had a negative impact on the market for multi-million dollar waterfront property. If the Rhode Island Property were marketed for a longer period of time, there is a reasonable degree of probability that a substantially better price could have been obtained. *See Zuercher Tr. of 1999 v. Schoenmann*, 2016 Bankr. LEXIS 542, at *13 (B.A.P. 9th Cir. Feb. 22, 2016) (finding that chapter 11 trustee and his brokers "amply" marketed the property when they marketed it for six or seven months).

---

[1] https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html
[2] https://www.forbes.com/sites/sergeiklebnikov/2020/02/28/the-stock-market-is-in-freefall-on-coronavirus-fears-how-much-worse-will-it-get/#19563892fb21

When the Court approved the bidding procedures for the Rhode Island Property, it could not have anticipated the seismic effects that the coronavirus would have on the stock market and the U.S. economy. There are compelling equities for re-opening the auction and remarketing the property. *In re F.A. Potts & Co.*, 86 B.R. 853, 858 (Bankr. E.D. Pa. 1988) ("where there are even slight circumstances which suggest that there is unfairness to the estate . . . . a careful consideration should be had on review and a confirmed sale should be set aside if necessary to rectify the situation.")  As the evidence at trial will show, an extended period of marketing for the Rhode Island Property and re-opening of the bidding process would improve the shockingly low sales price obtained by the Debtor at auction while the United States was teetering on the verge of a public health crisis and extreme economic volatility.

Although a trustee's business judgment enjoys "great judicial deference," this discretion is not without limit. *See In re WPRV-TV, Inc.*, 983 F.2d 336, 319 (1st Cir. 1993).  For the reasons set forth above, the circumstances are appropriate for a court to interfere with the trustee's judgment "for the purpose of safeguarding the interest of parties concerned, such as creditors and bidders." *In re Blue Coal Corp.* at 163.

**2.    How should the sale proceeds be applied.**

LH and the Debtor disagree on how the sale proceeds should be applied.

On the one hand, LH contends that the sale proceeds should be applied to the liens on the Rhode Island Property based on their respective priority regardless of whether they are consensual liens from both the Debtor and Mr. Barnes, or executions recorded solely against Mr. Barnes' interest in the Rhode Island Property.

On the other hand, the Debtor contends that the sale proceeds should be applied first to the two (2) consensual mortgages (and other encumbrances of record such as real estate taxes)

with the balance divided 50:50 between the Debtor's estate and the attachments against Mr. Barnes' interest in the Rhode Island Property.

To resolve the dispute, this Court must look to Rhode Island real property law and determine whether or not the interests of a husband and wife in a Rhode Island home owned as tenants in the entirety are divisible, and if not, whether an attachment of an interest of one spouse can be defeated by a sale to third party.

This issue was clearly and unambiguously answered by the Rhode Island Supreme Court in *In re Gibbons,* 459 A.2d 938 (R.I. 1983). This case arose as a bankruptcy case in the District of Rhode Island. The relevant facts were that the debtor, George Gibbons, claimed as exempt his interest in his home which he owned with his wife as tenants in the entirety. A creditor objected to the proposed exemption. Mr. Gibbons argued that since the creditor could not levy on the home unless and until Mr. Gibbons survived his wife and became the sole owner of the home, his interest in the home could be exempted. The bankruptcy judge initially agreed with Mr. Gibbons concluding "that an attaching creditor's 'inchoate and/or contingent right to levy' was insufficient to preclude an exemption under 11 U.S.C. Section 522(b)(2)(B) (West 1979) which permits exemptions for realty to the extent that the debtor's interest is 'exempt from process' under state law." *Id.* at 939.

On appeal, the Bankruptcy Appellate Panel certified the following two (2) questions to the Rhode Island Supreme Court:

> 1. Whether, in fact, after a valid attachment of the husband's interest in a tenancy by the entirety, that attachment can be defeated by a joint conveyance of the property.
>
> 2. Whether, in fact, after a valid attachment of the husband's interest in a tenancy by the entirety, that attachment can be defeated by a conveyance of the husband's interest to the wife.

*Id.*

9

The Rhode Island Supreme Court answered "No" to both questions:

> A debtor who has had his property attached cannot defeat that attachment by conveying the property to a third party. Based on fundamental priority rules, the result of such a conveyance is that the third party takes subject to the attachment. In the present case the property attached is the husband's interest in a tenancy by the entirety. However, we feel that this fact does not change the applicability of the rule just enunciated, namely, that an attachment is not defeated by a conveyance of the property. **Therefore, in response to the first question certified, we decide that the attachment is not defeated as the third-party grantee takes subject to the attachment lien. In response to the second question certified, we again decide that the attachment is not defeated as the wife takes subject to the attachment lien**.

*Id.* at 939-940 (emphasis added).

The court further explained:

> In *Cull v. Vadnais,* R.I., 406 A.2d 1241 (1979), we held that a creditor had the right to attach a debtor-spouse's interest in real property held as tenancy by the entirety. We further stated that the contingent interest of the debtor-spouse, though sufficient to sustain a prejudgment attachment, was not subject to levy and sale by execution. In such a case the attachment previously placed could be levied and implemented by execution if the debtor spouse survives the nondebtor spouse. However, if the nondebtor spouse survives, he or she would take free and clear of the attachment, which would then be of no further force and effect. *Knibb v. Security Insurance Co., of New Haven,* 121 R.I. 406, 399 A.2d 1214 (1979).

*Id.* at 940.

Accordingly, applying Rhode Island real property law, a sale of the Rhode Island Property, owned by the Debtor and Mr. Gibbons as tenants in the entirety is indivisible and does not defeat or strip the attachments solely against Mr. Gibbons' interest in the property.

It should be noted that in prior briefing, arguments were made that in the subsequent *Gibbons* decision, the late Rhode Island Bankruptcy Judge Arthur Votolato came to a different conclusion when he stated:

> In the event of such a sale by the trustee, one-half of the proceeds goes to the non-debtor spouse, and the other half remains in the estate for distribution to creditors, subject to debtor's exemptions allowed by federal or state law.

*In re Gibbons,* 52 B.R. 861, 864 (Bankr. D.R.I. 1985).

However, not only was this statement *dicta,* but when read in context of the prior paragraph, it is not clear whether Judge Votolato meant this statement to apply to Rhode Island tenancies in the entirety in particular or more generally when a bankruptcy debtor spouse sells a home co-owned by a non-debtor spouse.  This is buttressed by the fact that Judge Votolato ultimately followed the clear dictates of Rhode Island Supreme Court articulated above.  Judge Votolato stated that "[i]n light of this recent pronouncement by the Rhode Island Supreme Court, we do not regard as merely illusory the legal fact of life that in this state an attachment places real and substantial restraints upon a debtor's interest in property held by the entirety."  *Id.* at 867.  Judge Votolato then sustained the objection to the proposed exemptions stating:

> … we have narrowly concluded that property subject to attachment in Rhode Island is not "exempt from process," and that it therefore does not qualify as exempt property under federal bankruptcy law. Accordingly, under § 363(h) (*see supra* p. 864), otherwise non-exempt entireties property may be administered by the bankruptcy trustee for the benefit of creditors. We also hold that a Rhode Island debtor electing state exemptions may not avoid judicial liens against entireties property under § 522(f)(1), because such liens do not impair any exemption to which he/she is entitled under state law.

> *Id.* at 868.

Accordingly, applying Rhode Island property law, the proceeds from the sale of the Rhode Island Property must be applied to all encumbrances and liens on the property in their respective priority.

**9.  Voir Dire Questions**

Not applicable.

**10. List of Witnesses**:

1.  Peter Scotti, Peter M. Scott & Associates, 403 S Main St, Providence, RI 02903.

11

Mr. Scotti will testify as to his appraisal of the Rhode Island Property, the gross inadequacy of the proposed sale price and the inadequacy of the marketing of the Rhode Island Property prior to the auction.

2.   Josh Altman, Altman Brothers, Douglas Elliman Real Estate, 103 S. Robertson Blvd., Los Angeles, CA 90048

Mr. Altman will testify as to his marketing plan for the Rhode Island Property in the event the Court denies confirmation of the sale.

3.   Michael Riccio, Principal of LH Rhode Island Property, LLC, 124 Andrews Street, Southington, CT 06489

Mr. Riccio will testify as a lay witness regarding his observations at the auction and as an expert witness in his capacity as a broker as to the inadequacy the marketing of the Rhode Island Property prior to the auction and other issues related to the sale.

## 11. Exhibits

1.  Altman Brothers Marketing Plan for 33 Bay Street, Westerly, RI, **Exhibit A** annexed hereto.

2.   An appraisal of 33 Bay Street, Westerly, RI by Peter M. Scotti & Associates will be filed with the Court upon completion.  Mr. Scotti was only recently engaged when mediation efforts failed.  He is viewing the Rhode Island Property today.

## 12. Deposition Testimony

None.

## 13. Requests for Jury Instructions

None.

**14. Anticipated Evidentiary Problems**

None.

**15. Proposed Findings and Conclusions**

The proposed sale price for the Rhode Island Property is "grossly inadequate" and does not maximize the assets of the estate for creditors. Confirmation of the sale for $10,300,000 should be denied on these grounds. The Rhode Island Property should be re-marketed pursuant to the plan set forth by the Altman Brothers.

The sale proceeds should be applied to all liens of record on the Rhode Island Property.

**16. Trial Time**

LH expects to put its case on in a day.

**17. Courtroom technology**

Witness Josh Altman lives in California and in light of the current Covid 19 crisis, he would need to testify by video conferencing.

**18. Further proceedings**

None.

**19. Election for Trial by Magistrate**

The parties have not elected to have the case tried by a Magistrate Judge.

LH VT HOUSE, LLC
By their attorneys,


*/s/ Nicholas Vegliante*
Scott Rosen, Esq.
Nicholas Vegliante, Esq.
Cohn Birnbaum & Shea, P.C.
100 Pearl Street
Hartford, CT 06103
(860) 493-2200
Email: srosen@cbshealaw.com
        nvegliante@cbshealaw.com

Theodore Orson, Esq.
Orson and Brusini, Ltd.
144 Wayland Avenue
Providence, RI 02906
(401) 223-2100
Email: torson@orsonandbrusini.com
(Mr. Orson has been admitted *pro hac vice*
in the Chapter 11 bankruptcy case of Donna
Barnes; a petition to admit Mr. Orson *pro hac
vice* in this adversary proceeding is currently
pending.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of March, 2020, a copy of the foregoing Amended Trial Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


/s/ Nicholas Vegliante, Esq.